UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BDO USA, P.C.,                                           :

        Plaintiff,                              :   INDEX NO.

  - against -                                           :   COMPLAINT AND JURY DEMAND

Justin Rojas,                                            :   Date:       January 5, 2024
                                                                                                      Time:
        Defendant.                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff BDO USA, P.C. ("BDO") files this Complaint against Justin Rojas ("Rojas") for breach of contract, breach of the duty of loyalty, and as a faithless servant. In support, BDO alleges as follows:

## NATURE OF THE CASE

1. This case arises out of former BDO employee Rojas's departure to Armanino LLP ("Armanino")—a competitor of BDO—and subsequent raiding of BDO clients and employees in violation of Rojas's restrictive covenant obligations to BDO.

2. For a period of eighteen months after the termination of Rojas's employment as Tax Managing Director, Rojas promised not to solicit or service any of the clients or prospective clients with whom he had relationships that he acquired, developed, or otherwise maintained while employed with BDO.

3. Rojas's agreement also contains an employee non-solicitation clause, under which Rojas is prohibited from soliciting BDO employees to leave BDO's employ or to perform accounting, auditing, tax, investment advising, or consulting services for another firm.

4. Rojas left BDO's tax practice for Armanino in early November 2023. That very same week, Caleb Crandell ("Crandell"), Rojas's direct supervisor and the Tax Practice Leader at BDO's Denver office, also left BDO for Armanino.

5. Three more BDO employees that worked with Rojas and reported to Crandell in the Denver tax group—Timothy Vacchi ("Vacchi"), Kaylin Koopmans ("Koopmans"), and Tara Dunphy ("Dunphy")—have since departed BDO for Armanino.

6. Upon information and belief, Rojas either directly solicited Vacchi, Koopmans, and Dunphy, or indirectly aided Crandell and/or Armanino's solicitation of these employees.

7. On or about December 12, 2023, three BDO clients whom Rojas had relationships that he acquired, developed, or otherwise maintained while employed with BDO informed BDO that they would no longer use BDO's services.

8. One of these clients, Client A, specifically informed BDO on a call that it was following Rojas and his team to Armanino. The other two clients, Client B and Client C, are also following Crandell, Rojas, and the rest of that team to Armanino.

9. Rojas either directly solicited Clients A, B, and C, or indirectly aided Crandell's and/or Armanino's solicitation of these clients in direct violation of his restrictive covenant's prohibition on soliciting of BDO's clients.

10. Rojas is now providing tax services to Clients A, B, and C at Armanino in direct violation of his restrictive covenant's prohibition on servicing clients with whom he has relationships that BDO enabled him to acquire, develop, or otherwise maintain while employed with BDO.

11. In fact, Rojas transferred large amounts of data to Client B in the days leading up to his departure from BDO that he otherwise would not have a reason to send to Client B.

12.     When given the opportunity to submit a sworn affirmation that he had not solicited BDO's clients and employees, Rojas did not respond.

13.     These three lost clients total nearly $1.8 million in annual fees for BDO.

14.     BDO further had expended resources in recruiting and training the employees solicited by Rojas to join Armanino.

15.     Rojas's conduct violates the contractual obligations that he owes to BDO and has caused and will continue to cause BDO substantial financial damage.

16.     Rojas's conduct while still employed at BDO constitutes a breach of the duty of loyalty he owed to BDO and acts of a faithless servant.

17.     BDO seeks damages and equitable relief from Rojas for his respective breach of contract, breach of the duty of loyalty, and faithless servitude.

## PARTIES, JURISDICTION, AND VENUE

18.     Plaintiff BDO is a professional corporation incorporated under the laws of the state of Virginia with its principal place of business in Chicago, Illinois. BDO operates an office in Denver, Colorado.

19.     Upon information and belief, Defendant Rojas is an individual domiciled in the state of Colorado and a current employee of Armanino's Denver, Colorado office.

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the Parties, who are citizens of Virginia and Illinois, on the one hand, and Colorado, on the other, and the amount in controversy exceeds the sum or value of $75,000.

21.     This Court has personal jurisdiction over Rojas because he agreed to submit to the exclusive jurisdiction and venue of courts in New York County, New York, in his Manager Agreement with BDO. (Ex. 1 ¶ 17.) BDO further does business in New York.

22. Venue is proper in this judicial district because Rojas agreed to submit to the exclusive jurisdiction and venue of courts in New York County, New York, in his Manager Agreement with BDO. (Ex. 1 ¶ 17.) BDO further does business in New York.

## FACTUAL ALLEGATIONS

A. **BDO's Business & Employment of Rojas**

23. BDO is a professional services corporation that provides accounting, auditing, tax, and consulting services to clients across the country. BDO has offices in over thirty states, including in Denver, Colorado.

24. BDO invests substantial time in, and financial resources in, acquiring, developing, and maintaining client relationships through its employees. Employees are granted access to BDO's confidential and trade secret information used in servicing clients and in further developing lasting relationships with clients on behalf of BDO.

25. To protect BDO's trade secrets and client relationships, BDO requires senior employees to enter into employment agreements containing restrictive covenants that bar employees from soliciting BDO clients, prospective clients, and employees.

26. Rojas entered into Manager Agreement (the "Agreement," attached hereto as Exhibit 1) with BDO's predecessor, BDO USA, LLP, on October 27, 2021, that contains the following client and prospective client non-solicitation covenant:

> If, without the specific written consent of the Chief Executive Officer, or his/her designee, Employee performs by himself/herself, or through an entity with which he/she is or becomes associated, or arranges for such entity to perform, engagements involving accounting, auditing, tax, investment advisory or consulting services, or any related services, for a Client (defined below) or causes a Client or Prospective Client (defined below) of [BDO] to terminate its relationship with [BDO] through unfair competition or business practices, including through the unauthorized use of Confidential Information, then Employee will compensate [BDO] for the loss and damages suffered by [BDO] by reason of lost engagement(s)….

> [A] "Client" is a client with whom Employee has a relationship which [BDO] enabled him/her to acquire, develop and/or otherwise maintain while employed by [BDO] through his/her performance of services for such client or other activity, or as to whom Employee has Confidential Information obtained through [BDO], and a "Prospective Client" is any person, company, partnership or other entity to which [BDO] has made an oral or written proposal to perform services and for which Employee was involved in such proposal or had access to Confidential Information regarding such proposal.

(Ex. 1 ¶ 7(a).)

27. The damages for a breach of the non-solicitation covenant are set forth in the Agreement as follows:

> Employee will compensate [BDO] for the loss and damages suffered by [BDO] by reason of lost engagement(s) by paying liquidated damages in an amount equal to the greater of -EITHER- (i) (A) one and one-half times the fees charged for such engagement(s) by [BDO] for services performed by [BDO] either (1) during the last full fiscal year or (2) the 12 month period prior to the last date upon which [BDO] performed services for the Client which [BDO] loses as a result of such breach, whichever is greater, or (B) in the case of a Prospective Client or a prospective engagement for a Client, one and one-half times the amount of the proposed fee for the next 12 months of such lost engagement(s) -OR- (ii) one and one-half times the amount of the fee paid for such lost engagement(s) in the 12 month period following Employee's departure from [BDO].

(Ex. 1 ¶ 7(a).)

28. The Agreement also contains the following employee non-solicitation agreement and damages provision:

> If Employee, without the specific written consent of the Chief Executive Officer, or his/her designee, solicits or otherwise causes another employee to leave [BDO] through unfair competition or business practices or in violation of Employee's fiduciary duty, including the unauthorized use of Confidential Information, or to perform engagements involving accounting, auditing, tax, investment advisory and/or consulting services for any firm, person or entity other than [BDO], then Employee will pay [BDO] an amount equal to the total of (i) twenty-five percent (25%) of the Annual Earnings of the departing employee, to cover the costs of replacing the departing employee; and (ii) an additional ten percent (10%) of the departing employee's Annual Earnings for each year of service of the departing employee, up to a maximum of fifty percent (50%) of the departing employee's Annual Earnings, to cover training costs.

(Ex. 1 ¶ 7(b).)

29.    In addition, the Agreement provides that BDO USA, LLP is entitled to pursue all legal or equitable remedies under the law, including injunctive relief and its reasonable costs and attorneys' fees if BDO USA, LLP is the prevailing party. (Ex. 1 ¶¶ 10, 16.)

30.    The Agreement provides that New York law applies to any dispute arising thereunder, and that New York state and federal courts are the proper jurisdiction and venue for such claims. (Ex. 1 ¶ 17.)

31.    The Agreement further provides that "[BDO] may assign or otherwise transfer all of its rights and obligations of this Agreement, or any part of this Agreement, at any time in its sole discretion." (Ex. 1. ¶ 14.)

32.    In exchange for his consent to the Agreement, Rojas received employment with BDO USA, LLP, including significant compensation, benefits, and access to confidential and trade secret information.

33.    On July 1, 2023, BDO USA, LLP converted to a Delaware professional services corporation, changing its name from BDO USA, LLP to BDO USA, P.A. with the same federal employer identification number. Through this conversion, BDO USA, LLP changed its legal structure while continuing to exist and operate as the same entity. Under Delaware law, BDO's conversion to a professional corporation did not constitute the dissolution of the firm and the creation of an entirely new firm; rather, it was a continuation of the existence of the firm in the form of a professional corporation.

34.    On August 30, 2023, BDO USA, P.A. transferred its jurisdiction of formation from Delaware to Virginia, changing its name to BDO USA, P.C. with the same federal employer identification number. As with its conversion to a professional corporation, BDO's domestication

in Virginia constituted neither a dissolution of the company nor the formation of a new entity. BDO continued to exist and operate as the same entity, only with a different state of incorporation.

35. All assets, rights, and obligations of BDO USA, LLP are now assets, rights, and obligations of BDO USA, P.C.

36. The assets, rights, and obligations of BDO USA, LLP under the Agreement are now the assets, rights, and obligations of BDO USA, P.C.

37. Following the conversion, Rojas continued his employment with BDO.

38. Rojas was a Tax Managing Director at BDO's Denver, Colorado office, where he provided direct tax advising services to many of BDO's Colorado clients, including Client A, Client B, and Client C. BDO enabled Rojas to acquire, develop, or otherwise maintain these relationships with Client A, Client B, and Client C while Rojas was employed with BDO.

**B.   Rojas's Departure & Raid on BDO's Clients & Employees**

39. On or about November 3, 2023, Rojas informed BDO that he was leaving BDO for Armanino's Denver tax practice.

40. That same week, Crandell, BDO's Tax Practice Leader also informed BDO he was leaving BDO for Armanino. Crandell also has client and employee non-solicitation agreements with BDO.

41. Concerned by these near-simultaneous departures for Armanino, BDO sent both Rojas and Crandell letters on November 9, 2023, reminding them of their post-employment obligations not to solicit BDO's clients or employees.

42. Meanwhile, three other employees that worked with Rojas and also reported to Crandell—Vacchi, Koopmans, and Dunphy—informed BDO that they were leaving BDO for Armanino. Vacchi also has restrictive covenants with BDO, while Koopmans and Dunphy have non-disclosure agreements.

43. Upon information and belief, Rojas directly or indirectly solicited Vacchi, Koopmans, and Dunphy to join him and Crandell at Armanino in direct violation of his employee non-solicitation agreements.

44. BDO took swift action, sending additional cease and desist letters to Vacchi as well as a cease and desist letter to Armanino asking for assurances that the former BDO employees were complying with their restrictive covenant obligations.

45. BDO also provided an affirmation to Rojas to sign stating that he was in compliance with his non-solicitation agreement.

46. Rojas never signed that affirmation.

47. Shortly afterward, BDO learned that three clients to whom Rojas provided direct services during his employment at BDO were taking their business to Armanino.

48. On December 12, 2023, Client B informed BDO that it was leaving BDO.

49. Client B further stated that Crandell, Rojas, and Armanino were servicing Client B.

50. Rojas had an established relationship with Client B while at BDO. Rojas provided direct tax services to Client B on behalf of BDO for multiple years. BDO enabled Rojas to acquire, develop, or otherwise maintain the relationships with Client B while Rojas was employed with BDO.

51. Rojas—either directly or indirectly—solicited Client B to move its business from BDO to Armanino.

52. On November 3, 2023—the same day Rojas submitted his resignation to BDO—Rojas transferred 14 .zip files of Client B data to Client B.

53. Ten days later on November 13, 2023—after Rojas had already departed BDO for Armanino— Client B downloaded the same 14 .zip files containing Client B data.

54. There is no legitimate reason for Rojas to send these files to Client B.

55. Upon information and belief, Rojas coordinated the transfer of data to Client B via a seemingly innocuous file transfer while still employed at BDO in order to facilitate the performance of services for Client B on behalf of his new employer, Armanino.

56. Upon information and belief, Rojas concealed this transfer in what appeared to be a normal transfer of data between BDO and its client so as not to raise any suspicion that he was stealing BDO work product.

57. On November 27, 2023, Client B sent an email to Rojas's **Armanino** email address and Crandell's **former BDO** email address asking for their advice and consulting services on a tax matter.

58. This is in direct violation of Rojas's restrictive covenant not to solicit or perform services for BDO clients that he served at BDO.

59. On December 6, 2023, Client C informed BDO that it had decided to move its tax work to another firm. Upon information and belief, that firm is Armanino.

60. Rojas had an established relationship with Client C while Rojas was employed at BDO. Rojas provided direct tax services to Client C on behalf of BDO. BDO enabled Rojas to acquire, develop, or otherwise maintain the relationships with Client C while Rojas was employed with BDO.

61. On December 12, 2023, Client A informed BDO that it was moving its business to Armanino.

62. Rojas had an established relationship with Client A while at BDO. Rojas provided specialty tax services to Client A. BDO enabled Rojas to acquire, develop, or otherwise maintain the relationship with Client A while Rojas was employed with BDO.

63. Client A told BDO that Crandell and Rojas were the reason why Client A was going to Armanino.

64. Upon information and belief, Rojas persuaded Client A, Client B, and Client C to stop doing business with BDO and to move their business to Armanino.

65. Upon information and belief, Rojas is providing services to Client A, Client B, and Client C on behalf of Armanino.

66. On December 14, 2023, BDO sent a letter to Rojas demanding that he compensate BDO for the lost clients —Client A, Client B, and Client C—in accordance with the terms of his agreements with BDO.

67. Specifically, the letter demanded that Rojas compensate BDO as follows: (a) $378,003.20 for the loss of Client A's business; (b) $1,895,806.46 for the loss of Client B's business; and (c) $346,591.43 for the loss of Client C's business.

68. These amounts constitute 150 percent of the fees charged by BDO during the twelve-month period prior to the last date upon which BDO performed services for these clients.

69. Rojas contractually agreed to compensate BDO according to this formula upon the loss of client relationships due to a breach of his restrictive covenants. (Ex. 1 ¶ 7(a).)

70. BDO gave Rojas until Thursday, December 21, 2023, to confirm that he would honor his contractual agreement to BDO and compensate BDO the total of $2,620,401.08.

71. BDO stated that in the alternative, if Rojas claimed he has not breached his non-solicitation covenants, he must sign and return a declaration under penalty of perjury to that effect by December 21, 2023.

72. As of the date of this filing, Rojas has refused to confirm that he will compensate BDO for the lost clients as he is contractually obligated to do.

73. As of the date of this filing, Rojas has refused to sign a sworn declaration stating that he has not breached his agreements with BDO and has not solicited BDO's clients or employees.

74. In fact, Rojas has not responded to *any* of BDO's communications since his departure from BDO.

75. Rojas was a faithless servant and violated his duty of loyalty to BDO by soliciting clients and coordinating the transmittal of data to aid in his future work for Armanino while still employed at BDO.

76. Upon information and belief, Rojas is continuing to solicit additional BDO clients to move their business to Armanino in violation of his restrictive covenants with BDO.

## COUNT I
### (Breach of Contract)

77. BDO incorporates and realleges the previous paragraphs as if fully set forth herein.

78. On October 27, 2021, BDO USA, LLP and Rojas entered into a valid, enforceable, and binding Manager Agreement.

79. Rojas entered into the Manager Agreement for good and valuable consideration, including but not limited to, employment with BDO USA, LLP; compensation; insurance, retirement, and healthcare benefits; and access to confidential information.

80. At all times during his employment with BDO USA, LLP and for a period of eighteen months thereafter, Rojas owes a contractual duty not to solicit clients to whom he directly provided substantive services during his employment with BDO USA, LLP for engagements to perform accounting, auditing, tax, and/or consulting services, on behalf of himself or another firm or to provide accounting, auditing, tax, and/or consulting services on behalf of himself or another firm

81. In the event of a breach, Rojas's contract states he must compensate BDO USA, LLP in an amount equal to 150 percent of the fees charged by BDO USA, LLP to the lost clients in the last full fiscal year or the prior twelve-month period, whichever is greater.

82. During his employment with BDO USA, LLP and for a period of eighteen months thereafter, Rojas owes a contractual duty not to solicit BDO USA, LLP employees to leave BDO USA, LLP's employ or perform competing services for another firm.

83. In the event of a breach, Rojas's contract states he must compensate BDO USA, LLP in an amount equal to twenty-five percent of the annual earnings of each lost employee, plus an additional ten percent for each year of service of the lost employee to cover training costs.

84. The assets, rights and obligations of Rojas' contract have been transferred to BDO such that BDO can enforce the contract.

85. BDO has a protectable interest in these client relationships as it subsidized and financially supported Rojas's client development efforts during his employment with BDO.

86. Rojas's employment with BDO ended on November 6, 2023. Rojas owes these contractual obligations to BDO until June 6, 2025.

87. Rojas has violated his restrictive covenants by soliciting Client A, Client B, and Client C—clients to whom he directly provided substantive services while at BDO—to terminate their relationships with BDO and switch their business to his new employer, Armanino. BDO enabled Rojas to acquire, develop, or otherwise maintain these relationships with Client A, Client B, and Client C while Rojas was employed with BDO.

88. Upon information and belief, Rojas instructed Client B to surreptitiously download files from BDO that Client B would then make available for Rojas to use while providing services to Client B at Armanino.

89. Rojas has further violated his restrictive covenants by providing tax services to Client A, Client B, and Client C on behalf of Armanino.

90. Upon information and belief, Rojas is continuing to violate his restrictive covenants by continuing to solicit BDO clients to whom he directly provided substantive services while at BDO.

91. Upon information and belief, Rojas has violated his employee non-solicitation provision by soliciting Vacchi, Koopmans, and Dunphy to leave BDO and work for Armanino.

92. For any clients that Rojas solicits away from BDO, Rojas owes BDO 150 percent of the fees charged by BDO during the twelve-month period prior to the last date upon which BDO performed services for these clients.

93. That amount totals (a) $378,003.20 for the loss of Client A's business; (b) $1,895,806.46 for the loss of Client B's business; and (c) $346,591.43 for the loss of Client C's business.

94. Rojas further owes BDO twenty-five percent of the annual earnings of each employee he solicited away from BDO, plus an additional ten percent for each year of service of the employee to cover training costs.

95. That amount totals to $302,950.00.

96. Rojas has refused to compensate BDO for the lost clients and employees according to the formulas laid out in his contract.

97. As a direct and proximate result of Rojas's breach, BDO has suffered damages, including interference in BDO's business operations, damage to client relationships, and lost profits.

98. BDO is entitled to relief and judgment against Rojas in an amount in excess of $2,923,351.09, plus any additional damages that may be determined at trial, all equitable relief including restitution, as well as attorneys' fees, interest, costs, and other such relief and damages as BDO may prove at trial and this Court deems just and equitable.

## COUNT II
### (Breach of the Common Law Duty of Loyalty)

99. BDO incorporates and realleges the previous paragraphs as if fully set forth herein.

100. As an employee, Rojas owed his employer, BDO, a common law duty of loyalty.

101. Rojas breached that duty of loyalty by soliciting clients away from BDO to Armanino, soliciting employees away to join him at Armanino, and facilitating the transfer of information to Client B to perform services on behalf of Client B at Armanino while still employed by BDO.

102. Rojas's breaches have caused BDO to suffer damages in the form of lost clients, lost revenue, and interference in BDO's business operations.

103. BDO is entitled to relief and judgment against Rojas in an amount to be proven at trial, plus interest, costs, and other such relief as this Court deems just and equitable.

## COUNT III
### (Faithless Servant)

104. BDO incorporates and realleges the previous paragraphs as if fully set forth herein.

105. As an employee of BDO, Rojas owed a common law duty of loyalty to BDO.

106. Rojas engaged in acts of disloyalty to BDO.

107. Rojas intentionally violated his Manager Agreement with BDO, as well as BDO policies designed to protect BDO and its business and reputation.

108. The nature of the violations (including but not limited to, soliciting clients away from BDO to Armanino, soliciting employees away to join him at Armanino, and facilitating the

transfer of BDO information to Client B to perform services on behalf of Client B at Armanino, in direct violation of his restrictive covenants) and the fact that the violations were deliberate and intentional demonstrate that Rojas had no intention of complying with, and did not comply with, his fiduciary obligations of loyalty to BDO.

109. Under the faithless servant doctrine, Rojas is not entitled to retain any of the compensation and bonuses he received while employed at BDO, including but not limited to the disgorgement of all salary, benefits, and bonuses paid, plus interest, costs, and other such relief and damages as BDO can prove at trial and as this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, BDO respectfully requests that this Court grant:

a. An award of damages in an amount to be determined at trial, but in any event no less than $2,963,801.09, as a result of Rojas's breach of contract;

b. An award of damages in an amount to be determined at trial as a result of Rojas's breach of the duty of loyalty;

c. An award of damages in an amount to be determined at trial as a result of Rojas's faithless servant conduct;

d. An award of attorneys' fees, costs, and expenses incurred as a result of this action; and

e. Such further legal and equitable relief as this Court deems just and proper.

-16-

Dated: New York, New York.
January 5, 2024

Respectfully Submitted,

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York  10017-3852
+1 212 547 5400


By: /s/ Eli Berman
Eli Berman
Michael Sheehan
Brian Mead (*pro hac vice forthcoming)*
Barrick Bollman (*pro hac vice forthcoming*)
Emily Starbuck (*pro hac vice forthcoming*)

Attorneys for Plaintiff
BDO USA, P.C.